JUDGE PRYOR
delivered the opinion oe the court.
The question involved in this controversy is to be determined by. a proper construction of the statute under which these proceedings were had. If the legislature had vested the county court of one county with the power to compel the citizens of another county to aid in the construction of such improvements as might be deemed by the one conducive to the interests of both, the constitutional question made in this case would necessarily have to be considered; but in our opinion no such construction should be given the act, nor can we see how such unjust and oppressive legislation could be legitimately exercised.
Adjoining counties being often jointly interested in making such improvements as building bridges, making roads, etc., some legislation was required to enable the legally-constituted authorities of the two to co-operate in the construction of improvements in which they had a common interest.
The spirit and meaning of the enactment passed to accomplish this purpose is that when both counties deem it expedient to make such an improvement a commissioner shall be appointed by each, and the appointment of a commissioner by one county, with notice-of that fact to the other, is but an invitation to the latter to unite with the former in the undertaking.
When the county court of the county notified refuses to comply with the request or unite in the work the circuit court of that county is made the arbiter between the two, with *210 authority to determine from the facts adduced whether or not the county refusing to act shall aid in the erection of the bridge.
It is unreasonable to suppose that the legislature intended, as between adjoining counties containing the same character of population, the courts of each vested with similar jurisdiction, and their people interested alike in the social and business relations of each, to confer upon the one the sole power to judge of the necessity and expediency of constructing improvements that in the opinion of the one county only would redo.und to the interests of both.
All the sections of the statute with reference to the exercise of this alleged right must be construed together in order to arrive at the legislative intent. It is true the language of the 33d section (chapter 84 of the Revised Statutes) is “that where the county court of one county shall deem it advisable to erect a bridge, etc., the court shall appoint a commissioner, etc., and notify the court of the adjoining county thereof, and request the latter to appoint a like commissioner, and it shall be the duty of the court so requested to appoint such commissioner, and the two are to proceed to contract for the construction of the bridge.”
Although the language used in this section would imply that a demand made by the one should be complied with by the other, still the legislature gave to this language its proper interpretation in the two succeeding sections (34 and 35) with reference to the same subject.
Section 34 provides that when the court of the adjoining county refuses to appoint a commissioner the circuit court of the county so “refusing may issue a writ of mandamus to the county court, requiring it to show cause why an order shall not be entered up directing the appointment of a commissioner and the erection of the bridge.”
Section 35 provides that when the mandamus is returned *211 the “ circuit court shall hear and consider such evidence touching the matter as either party may adduce, and shall either dismiss the proceeding or award a peremptory mandamus, as may seem proper.”
If it was intended that the judgment of the court of the county first acting should be final as .to the expediency of erecting the improvement, and to deny the county notified the right to exercise any discretion in regard to it, why vest the circuit court with power to hear and consider such evidence as either party may adduce, with the additional right to dismiss the proceeding, etc.
The action of the appellant being imperative, as maintained by counsel, all the circuit court could have done was to require upon the hearing a compliance at once by the appellee with the order made by the appellant, a construction not warranted by the spirit and meaning of the section upon which it is based, and shown to be clearly erroneous by the sections succeeding it — the three taken together removing any doubt as to the real meaning of the act. Both the counties having a unity of interest in the building of the bridge, each should contribute to its erection, and each should have a voice as to the necessity and expediency of making the expenditure. Where they differ upon the question of expediency the circuit judge is made the arbiter between them.
There is no doubt but that the citizens of each of these counties are interested in increasing the facilities for travel, trade, and commerce between the two, and the erection of this bridge would doubtless be .of some benefit to all, and of great benefit to those living near the point where it is proposed to locate it. It appears, however, that there are two bridges already constructed over Dix River, upon roads leading from the one county-seat to the other, and a third one in process of construction. The county of Boyle is or was at the hearing of this cause, involved in an indebtedness of fifty thousand *212 dollars ; and its county court might well hesitate before burdening the citizen with an increase of taxation.
There is certainly a conflict in the testimony upon the question of expediency in the erection of this bridge; and the circuit judge to whom this legal controversy has been submitted by the act being upon the ground, and knowing the wants, necessities, and financial condition of each county and its inhabitants, his judgment is entitled to great weight in determining the question involved.
"We perceive no reason for disturbing the judgment of the court below. The same is therefore affirmed.